BOBBY MCWILLIAMS V. L. A. MUSE
No. A-6132. Decided April 10, 1957
(300 S.W. 2d Series 643)

*Ratliff, Conner & Walker,* of Spur, *John B. Stapleton,* of Floydada, for petitioner.

*Porter & Lewis,* of Clarendon, for respondent.

MR. JUSTICE WALKER delivered the opinion of the Court.

The controlling question in this case is whether there is any evidence to sustain presumed findings by the trial court that will support its judgment. L. A. Muse, respondent, brought suit against Bobby McWilliams, petitioner, to recover for personal injuries and property damage resulting from a truck collision. The case was tried by the court without the intervention of a jury, and judgment was rendered that respondent take nothing. The Court of Civil Appeals concluded that petitioner's liability was established by the evidence as a matter of law, and reversed the judgment of the district court and remanded the cause for a new trial. 295 S.W. 2d 680.

■ Petitioner alleged that respondent was guilty of contributory negligence in various respects, including failure to yield the right-of-way. No findings of fact by the trial court were requested or filed. We must presume, therefore, that such court resolved in petitioner's favor every issue of fact raised by the evidence, and must view the evidence in the light most favorable to such findings, disregarding all that is contrary thereto. North East Texas Motor Lines v. Dickson, 148 Texas 35, 219 S.W. 2d 795, 11 A.L.R. 2d 1065. Applying these principles to the present case, it is our opinion that there is evidence to support implied findings by the trial court that respondent negligently failed to yield the right-of-way and that such negligence was a proximate cause of the collision. Since the judgment of the trial court must be upheld on that ground, we do not reach the question of whether petitioner's testimony can be given the effect of a judicial admission that he did not stop.

Some of the relevant facts are not disputed. The accident occurred about noon at the intersection of a country road with State Highway No. 256 some nine miles east of Silverton. The day was clear and the roads were dry. Respondent was driving his Dodge pickup, hereinafter referred to as the pickup, in an easterly direction on the paved highway, while petitioner's International truck, hereinafter called the truck, was proceeding south on the unpaved country road. The paved portion of the highway is 20 feet in width and located in the center of a 100-foot right of way. The country road, which intersects the highway at right angles, has a right of way 52 feet in width. The highway is comparatively level for a distance of approximately

three-quarters of a mile on either side of the intersection. There was a stop sign located in the north line of the highway right of way which controlled petitioner's entry into the intersection. At the time of the accident, no vehicle was approaching the intersection except the two trucks involved in the collision.

There is evidence in the record from which the trial court could have found that the accident happened in the manner now to be described. Respondent was driving along the highway at a speed of 45 miles per hour. He first noticed the dust from petitioner's truck when the latter was about one-fourth mile north of the intersection, and had the truck in full view from that time until the collision. The truck approached the intersection at a speed of about 20 miles per hour. Respondent thought at first that the truck was not going to stop, and reduced the speed of his pickup to 35 miles per hour. Just before reaching the intersection the truck slowed down and appeared to be stopping, and respondent resumed his original speed of 45 miles per hour.

Whether petitioner came to a full stop before entering the intersection is not material, but we shall assume that he did not do so. He looked in both direction, but did not see the pickup. This may have been caused by a mirage which was observed a short time after the collision and which obscured the view of vehicles approaching from the west. Instead of bringing his truck to a complete stop at the sign, petitioner changed into compound low gear and began crossing the intersection at a speed of approximately three miles per hour.

The collision occurred in the south traffic lane of the paved portion of the highway. Respondent applied his brakes when the pickup was about 39 feet west of the point of impact, and slid his tires for a distance of 33 feet. When the pickup was within five or six feet of the truck, respondent released his brakes and fell over into the seat to get out of the way of the steering wheel. The left front pumper of the pickup struck the truck at or near the right rear wheel of the latter. The truck is 16 feet in length from the front bumper to the back end of the bed, and the rear of the truck was south of the center of the highway at the moment of impact.

The parties stipulated that State Highway No. 256 is a through highway at the intersection in question, and it was petitioner's duty to stop and yield the right-of-way to other vehicles which had entered the intersection from such highway

or which were approaching so closely as to constitute an immediate hazard. Art. 6701d, Sec. 73(a), Vernon's Ann. Texas Civ. Stat. Respondent also contends that he was entitled to the right-of-way under the provisions of Art. 801(E), Vernon's Ann. Texas Penal Code, which requires the operator of a vehicle approaching an intersection to yield the right-of-way to another vehicle approaching such intersection from his right.

■ It is not necessary for us to decide whether petitioner or respondent initially had the right-of-way under the provisions of these statutes, because a statutory right-of-way rule is not absolute but relative, and is subject to the qualification that a person entitled to claim such right will exercise it with proper regard for the safety of himself and others. See Lewis v. Martin, Texas Civ. App., 120 S.W. 2d 910 (wr. ref.). If the driver who is under the statutory duty to yield the right-of-way fails to do so, the exercise of ordinary care may require the operator of the other vehicle to yield.

Petitioner's truck did not suddenly run out in front of respondent, but entered and proceeded across the intersection at a speed of 4.4 feet per second. At the time of the collision, the front end of the truck was at least six feet off of the south edge of the pavement. This means that the front of the truck traveled a distance of 40 feet from the stop sign to the north edge of the pavement, an additional 10 feet to the center of the pavement, and was not less than 16 feet south of such center line at the moment of impact. In the meantime, respondent was approaching the intersection at a speed of 66 feet per second. Considering factors of speed, time and distance, as the trier of fact was entitled to do, and allowing for a sharp reduction in the speed of the pickup when it was about 40 feet west of the truck, the trial court could have found from the foregoing evidence that the pickup was approximately the following distances west of the point of impact at the times indicated: (1) 950 feet when the front of the truck was even with the stop sign; (2) 350 feet when the front of the truck reached the north edge of the pavement; and (3) 200 feet when the front of the truck reached the center of the highway. Respondent testified that his brakes were in good working order, and that he could have stopped in a distance of from 50 to 60 feet when traveling at a speed of 40 miles per hour.

■ As the truck approached, and certainly when it began to cross, the paved portion of the highway, it should have been evident to respondent that petitioner might not stop and yield

the right-of-way. The exact time when he should have become aware of this possibility is necessarily a question for the trier of fact. Under the evidence the trial court could have decided that a reasonably prudent person in respondent's position would have realized the danger when the pickup was 300 feet west of the point of impact. It certainly cannot be said as a matter of law that a prompt application of the brakes at that time would not have reduced the speed of the pickup enough to permit the truck to clear the pavement. The trial court was entitled to conclude, therefore, that respondent failed to yield the right-of-way when the exercise of ordinary care required him to do so, and that such failure was a proximate cause of the collision.

■ When this Court decides that the Court of Civil Appeals has erred in sustaining a point of no evidence to support a jury verdict or the findings of the trial court, the order which we enter is usually determined by whether or not the appellant's brief in the intermediate court also contains points attacking the verdict and findings as contrary to the great weight and preponderance of the evidence. If such verdict or findings were properly challenged on the latter ground, we regard the "no evidence" holding of the Court of Civil Appeals as including a finding of insufficient evidence unless there is language in the opinion to the contrary. The established practice in such cases is to reverse the judgment of the Court of Civil Appeals and remand the cause to the trial court. Barker v. Coastal Builders, 153 Texas 540, 271 S.W. 2d 798; Bowman v. Puckett, 144 Texas 125, 188 S.W. 2d 571. But where the appellant has made no contention in the lower appellate court that the verdict or findings are against the overwhelming preponderance of the evidence, we can only reverse the judgment of the Court of Civil Appeals and affirm that of the trial court. Gifford v. Fort Worth & D .C. Ry. Co., 151 Texas 282, 249 S.W. 2d 190.

■ Respondent's single point in the Court of Civil Appeals asserts that "the trial court erred in rendering judgment that the plaintiff take nothing, since the judgment of the court is contrary to the law and the evidence." This clearly does not comply with the rule requiring that points of error direct the attention of the court to the errors relied upon. Rule 418, Texas Rules of Civil Procedure. It is so general as to encompass any and every error committed by the trial court, and therefore means nothing. We have carefully read respondent's entire brief in the Court of Civil Appeals, however, and do not find any contention that the implied findings of the trial court are against the great weight of the evidence. We must, therefore, reverse the judg-

ment of the Court of Civil Appeals and affirm that of the trial court, and it is so ordered.

Opinion delivered April 10, 1957.